# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

MARISELA NOLASCO VENTURA,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

No. 5:26-cv-03952-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I.   SUMMARY

Petitioner Maricela Nolasco Ventura ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California. In this habeas action, Petitioner challenges the legality of her re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking her liberty without notice of any change in circumstance warranting her sudden detention, without a hearing, and without any opportunity to be heard on whether she poses a danger or flight risk. Petitioner argues that by lifting her immigration detainer and authorizing her release from custody to reside freely in the community for over a decade, the

Department of Homeland Security ("DHS") conferred upon her a freedom from physical restraint protected by the Due Process Clause, and that this liberty interest could not be withdrawn absent constitutionally adequate procedural safeguards.

Having reviewed the record, and consistent with several recent decisions by this Court and in this District, the Court concludes that Petitioner's re-detention on February 8, 2026—without notice, justification, or evidence of changed circumstances—violated due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing.

## II.   FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Honduras. (Dkt. No. 1-3 at 1.) Petitioner asserts that she entered the United States without inspection approximately twenty-five (25) years ago. (Dkt. No. 1 ¶19.) Petitioner represents that she has been residing at a fixed address in Frederick, Maryland. (Dkt. No. 1 at 6.) Petitioner contends that she lived freely in the community, has two daughters, and has substantial family and community ties. (Dkt. No. 1 ¶20.)

On December 22, 2014, Petitioner was arrested for assault charges. (Dkt. No. 1-3 at 3.) On April 8, 2015, Officers lifted Petitioner's Immigration Detainer after all of the charges were dismissed by nolle prosequi. *Id*. On March 3, 2020 Petitioner was convicted of driving while impaired by alcohol and sentenced to probation before judgment. *Id*. According to the National Criminal Information Center, Petitioner has no criminal history in the United States on her record. *Id*.

Petitioner asserts that she was the victim of a serious qualifying crime, and she assisted law enforcement with its investigation of the matter. (Dkt. No.

2

1 ¶21.) Petitioner represents that she filed a Petition for U Nonimmigrant Status with the U.S. Citizenship and Immigration Services ("USCIS") on May 14, 2026. (Dkt. No. 1 ¶2.) A noncitizen is eligible for a U visa if (1) the applicant "suffered substantial physical or mental abuse as a result of having been a victim of" certain identified types of crimes; (2) the applicant "possesses information concerning [the] criminal activity"; (3) the applicant "has been helpful, is being helpful or is likely to be helpful" to government officials regarding the criminal activity; and (4) the crime occurred in the United States or violated U.S. law. *See* 8 U.S.C. § 1101(a)(15)(U)(i)(I)-(IV). Congress authorized a waiver of inadmissibility to allow a successful petitioner to remain in the country despite being otherwise removable. *See* BIWPA § 1513(e). Petitioner asserts that her Petition for U Nonimmigrant Status remains pending. (Dkt. No. 1 ¶2.)

On February 8, 2026, officers assigned to ICE Enforcement and Removal Operations ("ERO") Baltimore's Criminal Apprehension Program conducted a targeted enforcement against an individual named Jose Ramos. (Dkt. No. 1-3 at 2.) While in the area ICE Officers checked several vehicles and subsequently conducted a vehicle stop on Petitioner's car, resulting in her arrest. *Id.* Petitioner asserts that at the time of her sudden re-detention, ICE provided no advanced notice, no pre-deprivation hearing, and has identified no material adverse change in circumstance between Department of Homeland Security's ("DHS") 2015 decision to release her from custody and her February 2026 arrest. (Dkt. No. 1 ¶¶42 and 98.) Petitioner remains in detention at the Adelanto ICE Processing Center as of the filing of the Petition. (Dkt. No. 1 ¶1.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on July 15, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on July 22, 2026. (Dkt. No. 8.) Petitioner filed a Traverse (the "Traverse") on July 23, 2026. (Dkt. No. 9.) Both parties have consented to

proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.   DISCUSSION

Petitioner argues that her re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked her conditional liberty without providing notice, without a pre-deprivation hearing, and without any change in circumstance warranting her detention. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents do not address Petitioner's claims. Respondents, in their Answer, state that they "are not presenting an opposition argument at this time." (Dkt. No. 8.) Consistent with precedent, courts in this Circuit have regarded such silence as a concession. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at \*3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at \*4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). The Court notes this position and independently evaluates Petitioner's claims on the merits.

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id*. (citing INS v. St. Cyr, 533 U.S.

4

289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process.**

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91. When DHS lifted Petitioner's Immigration Detainer after determining that she was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that her re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents

5

deprived her of the ability to contest whether she posed a danger or flight risk before revoking her conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032– 33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking her release and re-detaining her absent adequate pre-deprivation process. The Court finds Respondents' lack of pre-deprivation process particularly troubling given that Petitioner was detained, without notice and without any change in circumstance warranting her sudden re-detention at a routine vehicle stop, while ICE was in the area for the purposes of conducting a targeted enforcement operation on another individual. Respondents' abrupt, unannounced re-detention of Petitioner in this manner demonstrates a severe and unconstitutional disregard for her due process rights.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts she has been residing freely in the community for approximately twenty-five (25) years; she has two daughters, substantial family and community ties, and she has a pending Petition for U Nonimmigrant Status  (Dkt. No. ¶¶ 1,2,20.)   While Petitioner remained subject to the immigration laws during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz,*

No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's lengthy period of release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining her freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

### 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding Petitioner's re-detention creates a significant risk of erroneous deprivation. Respondents provided no pre-deprivation notice, hearing, or opportunity for Petitioner to challenge the basis for revocation of her release. Additionally, DHS identified no change in circumstances between Petitioner's grant of release and her re-detention on February 8, 2026. Both *Matter of Sugay* and *Saravia* require materially changed circumstances before DHS may revoke a prior release determination. *Sugay*, 17 I. & N. Dec. at 640; Saravia, 280 F. Supp. 3d at 1194–97. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet

nothing in the record suggests that Petitioner's continued release threatened either interest at the time of her re-detention on February 8, 2026.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release on April 8, 2015, and her sudden re-detention on February 8, 2026. There are no allegations of criminal conduct and no new facts in the record that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of her re-detention on February 8, 2026. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner alleges that she was re-arrested at a routine vehicle stop while ICE was in the area conducting a targeted enforcement operation on another individual. As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention without prior notice, likewise concluded that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

Petitioner asserts that DHS lifted her immigration detainer on April 8, 2015, and she has been residing freely in the community since such time. (Dkt. No. 1-3 at 3.) The record reflects that throughout this entire period, Petitioner lived freely in the community with her family, built ties to the community, has no criminal history, and is eligible for U Nonimmigrant Status. (Dkt. No. 1 ¶¶2,20 and Dkt. No. 1-3 at 3.) Yet despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether

revoking her release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

### 3. Government Interest

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's

10

interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of her re-arrest. On the record before the Court, Respondents' interest in re-detaining Petitioner absent the constitutionally protected pre-deprivation procedures due—without any justification or prior notice while she was engaged in a mundane daily activity—is exceptionally weak. Under *Mathews*, the Government has no interest in bypassing pre-deprivation process in these circumstances.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of

11

Petitioner on February 8, 2026, without adequate pre-deprivation process, violated due process and that she should be released forthwith.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Maricela Nolasco Ventura's (A# 206-013-345) immediate release and restoration of liberty to the conditions existing prior to her detention on February 8, 2026, along with her personal belongings, including her identification, passport, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine her prior to her re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED:   July 31, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

12